[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
By application dated June 10, 1990, the plaintiffs William P. Gelinas and Morton Weiner, seek an order in the nature of a mandamus. The defendants in the mandamus action are Town of West Hartford and Donala Foster, Town Planner.
After a full evidentiary hearing, the court in an extensive oral decision denied the plaintiffs' application for an order in the nature of a mandamus. CT Page 5318
 II.
By a verified counterclaim dated February 7, 1991, the Town of West Hartford and Charles J. McCarthy as its building inspector (hereinafter called the plaintiff) seek injunctive relief and civil penalties against William P. Gelinas (hereinafter called the defendant).
The counterclaim is in 2 counts, the first count alleges zoning code violations and the second count alleges building code violations. The allegations are as follows:
COUNT ONE (Zoning Code Violations)
1. The plaintiff in the counterclaim, Town of West Hartford, the "town", is a municipal corporation organized and acting under the laws of the State of Connecticut, including, without limitation, its municipal charter and ordinances.
2. The plaintiff in the counterclaim, Charles J. McCarthy, is the building inspector of the town and as such is charged by the charter and ordinances of said town with the enforcement of the town's zoning ordinances and is authorized by 29-261 of the General Statutes to enforce the building code.
3. The defendant in the counterclaim, William P. Gelinas, is and has been since December, 1986, the owner of a parcel of land and the structures thereon located in said town and known as 119 Park Road.
4. The town duly and lawfully adopted various zoning regulations, which among other things, prohibit the erection, expansion or structural alteration of a structure until a permit has been issued pursuant to 177-38 of said ordinances.
5. Said zoning regulations also prohibit any part of a structure from being occupied or used or changed to another use until a certificate of occupancy has been issued by said building inspector certifying that the zoning ordinance has been complied with in full pursuant to 177-39 of said ordinances.
6. The subject property consists of a nonconforming structure and nonconforming use of a two-story building located in a BG zone constructed in 1925 pursuant to a building permit issued for use as a clubhouse, one residence and stores.
7. The defendant, on or about June 25, 1987, altered CT Page 5319 the structure by removing a stage, decreasing the size of an assembly hall and erecting two floors of off ices in place of the assembly hall area, storage area and stage without first obtaining site plan approval and building permits pursuant to said zoning regulations.
8. The defendant has used, occupied or changed said first floor assembly hall area, stage area and a storage area to said two floors of offices without first obtaining a certificate of occupancy pursuant to said zoning regulations.
9. The defendant has occupied, used or changed the basement of said structure from kitchen, dining, meeting and storage use to office and retail use without first obtaining a site plan approval and a certificate of occupancy pursuant to said regulations.
10. Said plaintiff building inspector examined said premises and ordered in writing the defendant to remedy the zoning violations on October 26, 1990 . . . March 31, April 21 and December 5, 1989 . . . December 23, 1988, June 29, June 30 and July 10, 1987.
11. The defendant failed to comply with the order to discontinue said zoning violations.
COUNT TWO (Building Code Violations)
1. Paragraphs 1 through 3 and 6 through 9 of the first count are hereby incorporated and made paragraphs 1 through 7 of the second count.
8. The state building code is the building code for the town pursuant to 29-253 of the General Statutes and prohibits, among other things, the construction or alteration of a structure, or change of occupancy of a building or structure requiring greater strength, or change to another use, or installation or alteration of any equipment regulated by said building code, without first applying for an obtaining a permit pursuant to Section 111.1 of said building code.
9. Said building code also prohibits any change in the use or occupancy of any portion of a structure subjecting it to any special provisions of said code without the approval of said building inspector and his certification that such structure meets the intent of the building laws for the proposed new use and occupancy and that such change results in no greater hazard to public safety or welfare pursuant to Section 103.2 of said building code. CT Page 5320
10. Said plaintiff building inspector notified the defendant in writing that he was in violation of said building code on October 26, 1990, and on said date ordered the defendant to cease and desist from the illegal use and occupancies. . . .
11. The defendant has failed to comply with said order.
12. Said plaintiff building inspector also notified the defendant in writing of said building code violations on March 31, April 21, December 5, 1989 . . . December 23, 1988, June 29, June 30 and July 9, 1987.
William P. Gelinas, the defendant in the counterclaim, in his answer, has admitted plaintiff's 1, 2, 3, 4 and 5 of the first count. The defendant admitted the subject property is in a BG Zone and admitted that interior structures were altered by removing a stage in the assembly hall on or about June 25, 1987, without first obtaining site plan approval and building permit. The defendant also admitted that it had used or occupied the first floor areas without first obtaining a certificate of occupancy.
As to Count 2 of the counterclaim, the defendant admitted Nos. 8, 9 and 10 and denied No. 11.
The defendant interposed 5 special defenses, special defenses 1-4 refer to claimed automatic approval, which is the basis for the mandamus action, which was denied by the court, rendering special defenses 1-4 moot. Special defense 5 relates to the plaintiff's request for restoration in its prayer for relief.
 III.
The property in question, 119 Park Road, West Hartford, is a two story building that was owned by a fraternal organization prior to the defendant's ownership in 1986.
The building is in a BG Zone. It has been described as a non-conforming structure with a residence on the top floor which is permitted because of the non-conformity. A BG Zone allows for businesses as a proper use.
Exhibit 5, which is a letter dated July 10, 1987 to William Gelinas from Adore Flynn Kurtz, Zone inforcement Official, indicates the following uppermost floor, caretaker's dwelling; first floor large public assembly room and stage, two rest rooms, small cloak room, small storage room, dressing/locker room on west side of state, barber shop east CT Page 5321 side of entry and Knights of Pythias office west side of entry and basement, kitchen area, dining area, meeting space, locker rooms in rear, storage room with lockers, boiler room, 1 bathroom and cloak room. The letter states, "any pre-existing non-conformity at 119 Park Road is limited to the use of the building in the same way with the same intensity as its non-conforming status permits."
 IV.
The plaintiff presented evidence through Charles McCarthy, the building inspector for the Town of West Hartford. Mr. McCarthy stated that on June 25, 1987, he discovered construction activity on the subject property without permits having been issued. He claims that such activity is in violation of 177-38 of the Zoning Code, which is entitled permits required and provides, "No structure shall be erected, expanded or structurally altered and no land use shall be established until a permit therefor has been issued, as required below." The plaintiff also asserts a violation of 177-41 entitled permit applications. 177-38 and 177-41 provide as follows:
177-38. Permits required. [Amended 7-25-89]
No structure shall be erected, expanded or structurally altered and no land use shall be established until a permit therefor has been issued, as required below.
 A. A special permit use, identified as such in 177-6B and C, in accordance with the procedure set forth in 177-42A.
 B. A use requiring site plan approval as identified in 177-6B and C or a lot split or lot line revision, in accordance with the procedure set forth in 177-42B.
 C. All other permitted uses, in accordance with the procedure set forth in 177-42C.
177-41. Permit applications.
 A. Applications made to Building Inspector. All applications for required permits shall be made to the Building Inspector on forms provided by his office. B. Contents of applications. An application for a building permit or zoning permit shall include the following: CT Page 5322
 (1) [Amended 11-15-77] At least three (3) prints of a plot plan of the premises, drawn to scale and certified by a licensed surveyor or engineer and/or landscape architect, as appropriate under Connecticut Registration Regulations, showing the following:
(a) The actual shape and dimensions of the lot.
 (b) The location, size and height of all existing and proposed structures.
 (c) The existing and proposed use of all existing and proposed structures and lot areas, if other than a one- or two-family residence.
 (d) The number of families, if any, each existing and proposed building is designed to accommodate.
 (e) The layout of existing and proposed parking and loading facilities and access thereto, including any parking barriers or walkways.
 (f) The type and location of any exterior lighting, including provisions for shading.
(g) The type, size and location of all signs.
 (h) The type and location of any required screening or landscaping.
 (i) A statement of proposed method of sanitary waste disposal.
(j) Any proposed drainage facilities.
 (2) [Amended 10-28-69] Such additional information as required by the Building Inspector or by the Planning Director or Commission where a special use permit or site plan approval is required, where necessary to determine that the requirements of the Zoning Ordinance are met. The Building Inspector may excuse compliance with requirements for specific information otherwise required on the plot plan where such compliance is not necessary to determine that the requirements of the Zoning Ordinance are met.
(3) Application fees as specified in 177-50. CT Page 5323
The defendant had the stage removed on the first floor thus reducing the size of the assembly hall. By virtue of that action 3 offices were established in the rear of the building. Also, where the stage existed, the defendant placed a full wall thus allowing for 3 more offices on the second floor. Exhibit 34, which are specifications for an emergency lighting system, has attached a floor plan for the basement, first floor and second floor. It was prepared for William Gelinas by Enter-Tel, Inc. The floor plan shows the area layout as of July 1, 1987.
Mr. McCarthy issued a stop work order on June 29, 1987 and the property was placarded with a do not occupy notice.
Mr. McCarthy testified that beside alleged violations in the West Hartford Zoning Code, there are violations under the State of Connecticut Building Code, which is marked Exhibit 49 and Exhibit 33, which code was in effect from April 15, 1987 through and including October 15, 1989. It is claimed that the following sections pertain to the instant case;
 103.2, 110.7, 111.1, 112.1, 117.3, 120.1, 120.3 121.1, 302.0 and 302.4
 V.
Based on the alleged zoning code and building code violations, the plaintiff's seek the following remedies:
1. A temporary and permanent injunction restraining the defendant, any agent, employee, servant or contractor of the defendant from the following:
 a. Using or occupying the illegal structure on the first floor, including the altered assembly hall, storage area and two stories of offices;
 b. Using or occupying the basement which was illegally changed from meeting, dining, kitchen and storage area to office and retail use and which is below the illegal two-story office structure on the first floor.
2. An order that the defendant correct the building code violations pursuant to Section 117.3 of said building.
3. An order that the defendant remove the illegal structures pursuant to Section 117.3 of said building code. CT Page 5324
4. An order that the defendant pay a civil penalty of $2,500 to the treasurer of the plaintiff town for failing to comply within ten days of the plaintiff building inspector's order to discontinue the zoning violations pursuant to 8-12 of the general statutes.
5. An order that the defendant pay the plaintiffs' costs and reasonable attorney's fees for his wilful violations of the zoning regulations pursuant to 8-12 of the general statutes.
6. An order that the defendant be fined $100 per day from June 29, 1987 to the date the zoning violations are corrected pursuant to 8-12 of the general statutes.
7. An order that the defendant be fined $250 per day from December 5, 1989 to the date the wilful zoning violations are corrected pursuant to 8-12 of the general statutes.
8. Any other relief as in law or in equity may appertain.
The remedies sought by the plaintiff are authorized by Conn. Gen. Stat. 8-12. Said section permits zoning enforcement officials with a means to enforce local zoning laws. The statute provides for injunctive relief and civil penalties.
The decision to grant or deny remedies under the statute is within the discretion of the court. Crabtree v. Coyle,19 Conn. App. 208 (1989). A determination to grant or deny an injunction must be determined based on the equities of the case and if an injunction is to issue it must be suitable as to the given case.
It is axiomatic that the plaintiff, as the moving party bears the burden of proof in establishing its entitlement to the remedies requested.
 VI.
Extensive testimony was presented concerning the status of 119 Park Road, West Hartford as it relates to the injunction action. Also the court rendered an inspection of the property with counsel on April 18, 1991.
A. First and Second Floor
There are two store front shops at the front of the building. On the east side of the building is a barber shop; said shop has been in existence for about 11 years under the ownership of Joseph Basile. CT Page 5325
On the west side of the building opposite the barber shop is Christine Nails, a personal service enterprise. At this location, preceding defendant's ownership, was a Lance Travel Agency. To the south of or to the rear of the two store front shops, is a main assembly hall. This hall had been used for meetings by the Knights of Pythias. It has been indicated that the hall was also rented out for social events, exhibits and sales events.
To the rear of the assembly hall was a stage. William Gelinas removed the stage, thus reducing the size of the meeting room. This allowed for the establishment of three offices to the rear of the building. Also by placing a full wall where the stage was, additional offices were established on a second level.
Said work was admittedly done without first obtaining the needed permits and approval of the plaintiff. Therefore said activity was in violation of 177-38 and 177-39 of the Zoning Code.
The defendant has caused the three offices on the first floor to be occupied by a Karate School, a Real Estate office and a Crafts shop.
The Karate School and the Crafts shop operate on a part time basis. It has been stipulated that all leases in the building are on a month to month term, except for two offices in the basement one known as Gentlemen's Choice, which lease runs to March of 1992 and the other to John Du Bois which lease runs to December 31, 1991. The additional offices on the second level have not been occupied or leased.
The creation of the increased offices on the first and second floor also violates the Building Code in that a permit pursuant to 111.1 of said code was not obtained.
The defendant has been notified by the plaintiff of the violation of the Zoning and Building Codes and to date he has still not complied with the plaintiff's orders nor has he obtained the needed permits and certificates.
Therefore the plaintiff has established by credible evidence the allegations in its counterclaim as to the first and second floor of the building and accordingly is entitled to remedies, which remedies will be discussed in a following section.
However, it is found that the allegation contained in Count CT Page 5326 One paragraphs 6 and 9 have not been established to the court's satisfaction. Paragraph 6 deals with the issues of non-conforming structure and uses and Paragraph 9 alleges changes in the basement. The evidence on this issue was contradictory and inconclusive, therefore the court finds that the plaintiff has not sustained its burden of proof as to allegations 6 and 9 of the first count.
Exhibit 34 contains a diagram of the basement, which indicates a kitchen on the west side, behind it a community center and office. Located on the east side is a storage room, behind it a furnace room, behind that a stairway, then a meeting room, and a back hall.
Currently, the area marked community center and office has been leased by William Gelinas to a business enterprise.
On the other side of the hall and in front of the meeting room is an office known as Gentlemen's Choice, leased by William Gelinas to Roy McMillan. Mr. McMillan testified that he has been in the building for two years.
The testimony relative to the use of the basement preceding the defendant's ownership is varied and conflicting.
The plaintiff contends that the basement was used by the Knights of Pythias for their activities and any office area and use was incidental to the fraternal functions.
The defendant refutes this and alleges that there was office use in the basement preceding his ownership in 1986. The defendant offered evidence that indicated that a Barbers Union and Electrical Contractors school utilized a space in the basement. It was also indicated that tag sales and theatrical productions took place in the basement.
Through testimony and a viewing of the property, it is found that there are no structural alterations in the basement subsequent to the defendant's ownership.
The court concludes that the plaintiff has not sustained its burden of proof concerning the allegations about the status of the basement. Accordingly the court will issue no injunction or assess any civil penalties regarding the basement.
 VII.
In its trial brief, the defendant argues that the plaintiff's request that specific tenancies within the premises CT Page 5327 be enjoined must be denied because the tenants were not joined in this action.
The defendant has not raised this issue in his pleadings and raises it for the first time in its trial brief.
It is found that the defendant entered into some of these tenancies after he was ordered by the plaintiff to stop work and not to occupy the premises until building and zoning permits were obtained. Also all leases, except for two in the basement, are on a month to month basis.
Further, two tenants on the first floor, Douglas Culmod and Carmen Costello, were called as witnesses for the defendant. They were accordingly aware of the lawsuit in question and did not seek to intervene, nor did the defendant move to have them or any tenants cited in.
The defendant has not carried its burden that, in law or in equity, the tenants must be joined in this action for injunctive relief to be ordered. Planning and Zoning Commission v. Desrosier, 15 Conn. App. 550, appears to allow for injunctive relief where a leasehold is involved.
 VIII.
The court finds that the plaintiffs have carried their burden of proof in showing that injunctive relief should be granted and civil penalties imposed.
Before so doing the court refers again to the Desrosier case, supra, where the defendants therein were also served with an order directing them to cease and desist from using their property as a two family residence, which order they also ignored. The Appellate Court stated at page 559:
 The defendants were served with an order directing them to cease and desist from using 26 Oak Drive as a two-family residence on November 19, 1985. The defendants have ignored this order. General Statutes 8-12 authorizes the zoning enforcement officer to order in writing the remedy of any condition found to exist in violation of the zoning regulations. The defendants could have appealed the cease and desist order to the zoning board of appeals, but they did not do so. Greenwich v. Kristoff, 180 Conn. 575, 578, 430 A.2d 1294 (1980). Because the defendants have failed to comply with a valid order which they did not challenge, the trial court should have granted the injunctive relief sought in the second count of the CT Page 5328 complaint.
In granting injunctive orders the court notes that said orders do not apply to the basement level or to the tenants therein.
The court also finds that the defendant, is a businessman in the community who owns over 20 buildings in West Hartford and other communities. He has varied extensive dealings with the plaintiffs and knows or should have known of the zoning and building code requirements as pertains to the subject property.
The court finds that his disregard of the applicable zoning and building code requirements are flagrant and wilful. That by altering the structure and the creation of the increased offices on the first and second floor, without receiving authority or permits from the plaintiff, the defendant has violated the zoning and building codes. And by ignoring the stop work order of Mr. McCarthy the defendant acted with wilful disregard of the zoning and building codes.
It is based on these violations and the wilful conduct of Mr. Gelinas that the court will grant the within mentioned orders.
In granting injunctive relief and civil penalties the court notes that as to civil penalties requested, it is the court's per day from June 29, 1987 to June 15, 1990 for the violations found herein. The need for any further injunctive remedies and/or civil penalties will be determined at a future time, defendant's compliance with the within orders.
The court denies the request of the plaintiff for a civil penalty of $2,500, however, attorney's fees in the amount of $6,000 are hereby granted.
 X.
The court issues the following orders:
1. Defendant is enjoined from using the first and second floors of the subject property except for the first floor store fronts and the second floor apartment, unless and until he has obtained all necessary zoning and building authorization, days to comply within this order. The court also retains jurisdiction to determine if there has been compliance and to determine what further injunctive orders and/or civil penalties may be required, if any.
2. On or before six months from the date of the entry of CT Page 5329 this injunction the defendant shall abate and correct the Zoning Code violation of 177-38 and the Building Code violation of 103.3 and 111.1 by removing the two floors constructed without zoning and building permits, unless
 a) defendant has obtained any and all necessary zoning permits, and
 b) defendant has filed a new building permit application together with a notarized statement by an independent certified structural engineer acceptable to the Town of West Hartford that the engineer has inspected the construction that occurred since 1987, including but not limited to electrical wiring, and finds the construction in conformity with all applicable codes and finds the construction safe, and the building permit is issued, and
 c) defendant has opened 119 Park Road to inspection by the building Inspector, including the temporary removing of any construction necessary for a full and complete examination required under the Building Code.
3. Nothing in this injunction order shall require the Building Inspector to violate the prohibition in 8-3(f) of the General Statutes against the issuance of a building permit without the certification in writing that the structure at 119 Park Road and the use of the building is in conformity with the Zoning Code or is a valid non-conforming use.
4. The defendant shall pay $100 per day from June 19, 1987 to June 15, 1990, as a fine for his unlawful alteration of the structure without zoning and building permits at 119 Park Road and for his unlawful maintenance and use of the rooms in the first floor for offices without authorization, permits or a certificate of occupancy, such fine shall be for the wilful violation of the zoning regulations pursuant to 8-12 of the General Statutes from June 29, 1987, when the defendant was ordered to obtain site plan approval for any changed uses in order to apply for and be issued building permits pursuant to 177-6, to June 15, 1990 when he filed an application for an order in the nature of a Mandamus.
5. The defendant shall pay the plaintiff's attorney's fees of $6,000, which were incurred as a result of his willful violation, along with paying the plaintiff's cost.
STENGEL, JUDGE CT Page 5330